# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2338

SCOTT E. SCHEERER,

*Plaintiff-Appellant,*

*v.*

JOHN POTTER, Postmaster General,
United States Postal Service,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 04-C-0611-S—**John C. Shabaz**, *Judge.*

ARGUED JANUARY 5, 2006—DECIDED APRIL 10, 2006

Before FLAUM, *Chief Judge*, and ROVNER and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Plaintiff-Appellant Scott Scheerer filed suit against the United States Postal Service, claiming that it failed to reasonably accommodate his suffering from diabetic symptoms by refusing to hire a replacement clerk in a timely fashion. Granting summary judgment in favor of the Postal Service, the district court ruled that Scheerer could not establish as a matter of law that he was disabled under the Rehabilitation Act, 29 U.S.C. § 794 (2000). We affirm.

## I. BACKGROUND

In 1993, Scheerer became the full-time postmaster in a small post office located in Wonewoc, Wisconsin. At that time, he had the assistance of a clerk who worked approximately thirty hours per week. In 1998, the public hours of the post office were reduced and the clerk's hours were also reduced to approximately fifteen hours per week. In July 2002, the clerk transferred to another location, leaving Scheerer to work alone in the post office.

The timing of the clerk's transfer could not have been worse for Scheerer because his Type 2 diabetes, which had been first diagnosed in 1993, began to worsen progressively throughout the years 2002 and 2003. For instance, during April 2002, Scheerer developed a diabetic ulcer on his left foot as a result of neuropathy in sections of his left foot (this diabetic ulcer healed in August 2002). In addition, throughout 2002, Scheerer's physician showed increasing concern for his weight condition and recommended significant dietary changes. At the end of 2002, Scheerer's condition had worsened, and he began insulin injections (two times per day) for the first time.

On December 9, 2002, Scheerer notified his supervisor, Janet Bieschke, that he was diabetic and that he was experiencing deteriorating health. He also requested additional help at work. (In fact, Scheerer had protested the potential loss of a clerk for many months, although his initial protest was not tethered to his health condition, but rather the increased work responsibilities he would likely face.) The Postal Service refused Scheerer's December 9, 2002 request for a replacement clerk.

On January 13, 2003, Scheerer contacted the Postal Service's Equal Opportunity office for pre-complaint counseling (the governing statute required Scheerer to seek such counseling within forty-five days of an adverse employment "event"). During this time, Scheerer's symp-

toms worsened, and around February 20, 2003, he developed diabetic ulcers on both feet. Scheerer continued his demands for a replacement clerk. On March 5, 2003, he wrote to Bieschke requesting a replacement clerk; he then followed up this request with another letter on March 15, 2003, which made similar requests and this time included photographs of his diabetic ulcers. Bieschke did not respond to these letters.

On March 21, 2003, Scheerer's physician provided a medical restriction that limited Scheerer's workday to a maximum of four hours. Scheerer forwarded this medical restriction to Bieschke. This letter prompted the desired response: four days later, on March 25, 2003, Bieschke authorized a replacement clerk, effective April 5, 2003.

On April 21, 2003, Scheerer filed a formal complaint with the Postal Service's Equal Opportunity office, which then led to the present suit. On March 4, 2005, the district court granted summary judgment in favor of the Postal Service, holding that Scheerer could not establish that he was disabled under the Rehabilitation Act because he could not show that he was severely limited in any major life activities, such as walking, sleeping, eating, and sexual reproduction. This appeal followed.

## II. ANALYSIS

To establish a prima facie case under the Rehabilitation Act, Scheerer must show that he: (1) suffers from a substantial limitation of a major life activity (*i.e.*, he is disabled under the terms of the statute); (2) is otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) has suffered an adverse employment decision because of the disability. *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002). Because of the similarity between the prima

facie requirements under Rehabilitation Act and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.* (2000), we look to our case law under the ADA to determine whether a plaintiff has established his prima facie burden. *Id.*

The dispositive issue in this appeal is whether Scheerer can establish that he was disabled by providing sufficient evidence that he suffered from a substantial limitation of a major life activity. The crucial inquiry for purposes of this appeal is whether Scheerer's "limitation is substantial or considerable in light of what most people do in their daily lives, and whether the impairment's effect is permanent or long term." *EEOC & Keane v. Sears, Roebuck & Co.*, 417 F.3d 789, 801 (7th Cir. 2005). To meet this requirement, Scheerer must be able to show that during the pertinent time period[1] he was either prevented or severely restricted from such major daily tasks, such as walking, eating, sleeping, or sexual reproduction. *Toyota Motor Mfg., KY, Inc. v. Williams*, 534 U.S. 184, 195-99 (2002); *Bragdon v. Abbott*, 524 U.S. 624, 637-38 (1998). This is a high standard to meet. *See id.* To survive summary judgment, the plaintiff must provide specific facts establishing that there is a genuine issue of material fact as to whether he is substantially limited in a major life activity. *Id.* Specific facts are required; conclusory allegations will not do. *Moore v. J.B. Hunt Transp., Inc.,* 221 F.3d 944, 951-52 (7th Cir. 2000).

---

[1] The parties dispute whether the pertinent time period for determining whether Scheerer was disabled should be frozen at January 13, 2003, when Scheerer initially requested pre-complaint processing, or should continue forward until April 5, 2003, when the Postal Service provided a replacement clerk. Because it does not alter our analysis, we will assume—without deciding—that our analysis should include the time period up until April 5, 2003.

This court has held that diabetic status, *per se*, does not qualify a plaintiff as disabled under the ADA. *Nawrot v. CPC Int'l*, 277 F.3d 896, 904 (7th Cir. 2002). Instead, we look to the individual impairments suffered by the diabetic individual to examine whether he meets the high threshold of establishing a genuine issue of material fact as to substantial limitation. *Id.* For instance, in *Lawson v. CSX Transp., Inc.*, 245 F.3d 916 (7th Cir. 2001), we held that a plaintiff who suffered from severe Type 1 (insulin dependent) diabetes and who was on a diet that severely restricted the types of foods he could eat, such that "dire and immediate consequences" would follow if he failed to maintain the strict dietary regimen, could be considered disabled under the ADA. *Id.* at 924. In *Nawrot*, we held that a plaintiff who could not completely control his blood sugar level, and, as a result, suffered from "unpredictable hypoglycemic episodes, of such extreme consequence that death is a very real and significant risk," as well as possible impaired ability to think coherently and loss of consciousness or cognitive ability, could establish disability under the ADA. *Nawrot*, 277 F.3d at 905. *In Branham v. Snow*, 392 F.3d 896 (7th Cir. 2004), we held that a diabetic who was "significantly restricted as to the manner in which he can eat" had established a genuine issue of material fact as to whether he was disabled under the Rehabilitation Act. *Id.* at 903.

Here, the district court held that Scheerer could not establish that he suffered a substantial limitation in major life activities, such as walking, eating, sleeping, or sexual reproduction. The record does not indicate otherwise. Although there can be no doubt that Scheerer suffered from pain and significant inconvenience from his progressively worsening diabetic condition, he does not point to enough evidence in the record to show that he was prevented from performing, or was otherwise severely restricted in, any major life activities. During the pertinent time period,

Scheerer did not experience many of the more severe symptoms of diabetes, including severe hypoglycemia, seizures, or loss of consciousness. This suggests that his diabetes had not yet worsened to such a stage where it severely restricted his major life activities.

For instance, Scheerer cannot establish that he was severely restricted in walking or standing. Although Scheerer relied on a cumbersome protective boot for a period of time because of his diabetic ulcers and experienced intermittent episodes of significant neuropathy, he nonetheless was generally able to walk and stand during the pertinent time period. Indeed, he conceded that he routinely completed all of his work duties during his eight-hour shift, and these duties *appear* to have included significant periods of standing or walking, although the record is admittedly somewhat underdeveloped on the exact nature of his job duties with respect to standing and walking. In any event, although Scheerer reported to the Postal Service that he "could hardly stand" at the end of his shift, there is nothing in the record indicating that his physicians determined that prior to March 25, 2003, (when he received a medical restriction) he was severely limited in his ability to stand or walk. *Cf. Keane*, 417 F.3d at 802 (holding that a reasonable jury could find that a plaintiff's neuropathy, which prevented the plaintiff from walking more than one city block, was a substantial limitation compared to the walking that most people do daily). In addition, once Scheerer's condition progressed further, such that he received a medical restriction limiting his workday to four hours, the Postal Service immediately approved a replacement clerk, who was at work within ten days of Scheerer's notification of his limited workday.

In a similar vein, Scheerer did not present evidence showing that his dietary restrictions were sufficiently severe to rise to the level of a substantial limitation. That is, the predominant purpose of his dietary restrictions

was to lose weight—as millions of other non-disabled individuals seek to do—rather than to control rapid fluctuations of his blood sugar levels that could lead to immediate and dire consequences. Moreover, his diet followed the general contours of the diets of most individuals seeking to lose weight. Thus, there is nothing in the record tending to show that his dietary restrictions were of the type of severe dietary restrictions that if not followed would lead to "dire and immediate consequences," or alternatively, were so unusually restrictive that they could impose a substantial limitation on the major life activity of eating. *Cf. Lawson*, 245 F.3d at 924.

Scheerer's evidence pertaining to severe restrictions in his ability to sleep is also insufficient. Scheerer's evidence on sleeping difficulties establishes, at most, intermittent disrupted sleep, but it cannot establish the type of prolonged, severe and long-term sleep difficulties that can amount to a substantial limitation in the major life activity of sleeping.[2] *Pack v. Kmart Corp.*, 166 F.3d 1300, 1306 (10th Cir. 1999) (holding that intermittent or treatable sleep

---

[2] Scheerer also refers to his psychological condition, which carries a diagnosis of "adjustment disorder with mixed emotional features." He does not spell out precisely how this condition results in a substantial limitation in a major life activity, aside from references to sleep disruption, which, as noted above, are not intrusive enough to qualify as a disability under the statute. Adjustment disorders are, by diagnostic classification, short-term psychological responses to life stressors, typically lasting less than six months. *See* AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 309.40 (4th ed. 1994). Scheerer does not argue that his psychological condition, standing alone, amounts to a disability under the ADA, and, under the circumstances here, it surely could not. *Cf., e.g.*, *Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1284, 1287 (7th Cir. 1996) (holding that plaintiff with a history of paranoid schizophrenia and bipolar disorder was disabled under the ADA).

difficulties that resulted from major depression did not substantially limit the major life activity of sleep).

Finally, Scheerer's evidence pertaining to a substantial limitation in sexual reproduction is insufficient. Scheerer complains of reduced sexual drive and difficulty in obtaining erections; he must rely on injections to sustain an erection. His complaint is limited reduced sexual activity, untethered to impairments in sexual reproduction. This alone may be fatal to his claim because this court has not recognized lowered sexual drive or impotence as the types of disruptions than can amount to a disability under the ADA or the Rehabilitation Act. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 764 n.6 (7th Cir. 2001). In *Contreras*, we recognized that severe limitations in the ability to engage in sexual activity *for the purposes of reproduction* (such as when an HIV-positive individual refrains from sexual activity because of fear of transmission to an offspring) could amount to an impairment of a major life activity in certain circumstances. *Id.* at 764, *citing Bragdon v. Abbott*, 524 U.S. 624, 638-39 (1998). But in *Contreras* we specifically distinguished that type of scenario from one in which the plaintiff is merely complaining of "a change in the frequency" with which he "can engage in intercourse," without showing "any significant impact on his ability to reproduce." *Id.* Thus, the type of impairment that Scheerer raises here—namely, reduction in sexual desire and erectile dysfunction—does not significantly limit his capacity to reproduce, and therefore is not likely to be a substantial limitation in the major life activity of reproduction. *See id; cf. Bragdon*, 524 U.S. 624.

In addition, even if this court were to recognize that the impairments in sexual activity that Scheerer addresses, irrespective of their impact on reproductive ability, could amount to a substantial limitation in a major life activity, Scheerer does not present enough evidence that he is substantially limited in these areas. That is, he concedes

that he is still able to engage in sexual activity, although it requires limited medical assistance. And nothing in the record indicates the type of medical or psychological conditions that necessarily render his lowered sexual drive a long-term, much less permanent, circumstance.[3] (Even if he could provide such evidence, Scheerer fails to explain in what fashion the Postal Service could reasonably accommodate his diabetes in the context of symptoms of sexual dysfunction.)

As a final note, Scheerer repeatedly argues that the district court erred in not considering the progressive and deteriorating nature of his disease to determine whether he was disabled. But taken to its logical conclusion, Scheerer's argument here would result in *any* individual with a progressive disease being designated as disabled at *any* point in time, merely because of the likely progressive nature of the impairment. The clear problem with this proposal is that it necessarily requires employees, employers, administrative bodies, and, inevitably, courts to speculate and predict on the likely future course of a progressive disease. *Cf. Bragdon*, 524 U.S. at 637 (holding that asymptomatic HIV could be a physical impairment that substantially limits the major life activity of reproduction because its effects are immediate on reproductive decisions). Given the wide variety of potential outcomes across individuals, particularly when considered in tandem with potential treatments, possible interventions, and general individual differences in response to progressive diseases, this is plainly an unworkable solution. Instead, the better course (and one mandated by the statute) is to require an individ-

---

[3] As noted above, Scheerer's psychological condition is not a severe or long-term psychological disorder, and, as a result, its effect on Scheerer's sexual drive is necessarily neither severe nor long-term.

ual to meet the requirements of disability at the time he seeks protections under the Rehabilitation Act.

The discussion above is not intended to minimize the significant suffering and pain experienced by the plaintiff here. There can be no doubt that he has experienced numerous difficulties that have impacted his life, and, indeed, in August 2003 he suffered an amputation of his right foot (several months after the Postal Service had reasonably accommodated him).[4] The Rehabilitation Act, however, requires a significantly higher level of impairment than Scheerer (fortunately) can show during the pertinent time period, and, as a result, summary judgment was appropriate in this case.

## III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the defendant.

---

[4] At oral argument, Scheerer's counsel raised, for the first time, the argument that Scheerer's subsequent amputation may have been related to the Postal Service's failure to reasonably accommodate Scheerer in a more timely fashion. Setting aside the likely waiver of these issues, because we hold that Scheerer could not establish that he was disabled, we need not reach the threshold issue of whether Scheerer's request for a replacement clerk was a reasonable request, or, assuming it was, whether the Postal Service's response was adequate under the statute.

No. 05-2338                                                    11

A true Copy:

      Teste:

                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*