

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-1-2007

# Clarke Kurek v. N Allegheny Sch Dist

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2276

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Clarke Kurek v. N Allegheny Sch Dist" (2007). *2007 Decisions.* Paper 1147.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1147

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2276

ILENE I. CLARKE KUREK,

Appellant

v.

NORTH ALLEGHENY SCHOOL DISTRICT

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-00208)
District Judge: Hon. Gary L. Lancaster

Submitted Under Third Circuit LAR 34.1(a)
March 29, 2007

Before: RENDELL, BARRY, and CHAGARES, Circuit Judges,

(Filed: May 1, 2007)

OPINION OF THE COURT

CHAGARES, Circuit Judge.

In this employment discrimination appeal, plaintiff/appellant Ilene I. Clarke Kurek

(Kurek) argues that her employer, defendant/appellee North Allegheny School District

(Allegheny), failed to provide a reasonable accommodation for her disability in violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq. The District Court granted Allegheny's motion for summary judgment, ruling that the undisputed record demonstrated that Kurek was not a "qualified individual" with a disability within the meaning of the Rehabilitation Act. We agree, and will therefore affirm.

I.

The pertinent facts are undisputed and may be succinctly stated. Kurek began teaching at Allegheny in 1993. In February 1999, Kurek stopped teaching due to the effects of her polycystic kidney disease, which caused her to suffer chronic abdominal pain and fatigue. In June 1999, Kurek formally retired from Allegheny, and applied for and received retirement disability benefits from the Pennsylvania State Employee Retirement System (PERS). This initial grant of disability benefits was for one year, and began in September 1999. In July 2000, Kurek applied for and received an additional year of disability benefits from PERS.

In February 2001, Kurek returned to work at Allegheny as an English teacher, but her kidney problems forced her to step down in April 2001. In August 2001, Kurek again attempted to return to work at Allegheny, but could complete only one day of work. Thereafter, Kurek again applied for and received disability retirement benefits from PERS for a one-year term beginning December 1, 2001. Kurek twice renewed her disability benefits in October 2002 and December 2003, respectively. Thus, between 1999 and the

2

beginning of the 2004-2005 academic year, Kurek received five years worth of disability retirement benefits. During this time, she worked as a teacher for less than 100 days.

In May 2003, Kurek advised Allegheny that she wanted to resume teaching. To this end, Kurek met with Allegheny's Director of Human Resources, Robert Devlin. Devlin advised Kurek that she would need to provide Allegheny with a doctor's note certifying her ability to return to work, which Kurek did. By letter dated May 12, 2003, Kurek's physician, Dr. Alejandro Gonzalez, stated that Kurek could return to work at Allegheny, provided that certain accommodations were met. Dr. Gonzalez's proposed accommodations were: (i) that Kurek take a break between periods; (ii) that Kurek be allowed to sit while teaching; (iii) that Kurek be assigned to teach two subjects that she previously taught; and (iv) that Kurek be allowed to be released early from school.

Allegheny agreed to the first three accommodations, but was unwilling to allow Kurek to leave school early. From Allegheny's perspective, it was imperative that teachers work a minimum of 7-3/4 hours on site on school days in order to fulfill their teaching and administrative responsibilities. Moreover, Allegheny maintained that from time to time, teachers were required to work beyond this minimum in order to attend staff and departmental meeting, parent-teacher conferences, and other school-related activities. In an effort to accommodate Kurek, however, Allegheny offered to structure Kurek's schedule so that the final two periods of her workday would be for lunch and lesson preparation, respectively, so as to give Kurek more rest and relaxation at the end of the day. Kurek rejected this accommodation, and filed suit against Allegheny. The

3

gravamen of Kurek's claim is that working a 7-3/4 hour workday is not an essential component of a teacher's job at Allegheny, and that Allegheny's insistence that she remain on-site for the duration of the school day therefore violates the Rehabilitation Act. In support of this claim, Kurek offered evidence to show that, at various points in time, seven teachers were permitted to leave school premises before the end of the school day.

The District Court disagreed with Kurek, and granted Allegheny's motion for summary judgment. This appeal ensued.

II.

We exercise plenary review over the District Court's grant of summary judgment. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005). A grant of summary judgment is appropriate where the moving party has established that there is no genuine dispute of material fact and "the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)). To demonstrate that no material facts are in dispute, the moving party -- here, Allegheny -- must show that the non-moving party, Kurek, has failed to establish one or more essential elements of her case. Celotex, 477 U.S. at 323-24. When determining whether judgment is appropriate as a matter of law, a court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. Hugh, 418 F.3d at 267. To survive a motion for summary judgment, Kurek cannot solely rest upon her allegations in the pleadings, but rather must set forth specific facts such that a reasonable jury could find in her favor, thereby establishing a genuine issue of

4

fact for trial.  Id.  While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

### III.

The Rehabilitation Act forbids federal employers and employers receiving federal funding from discriminating against persons with disabilities in matters of hiring, placement, or advancement.  See Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996).[1] In order for an employee to make out a prima facie case of discrimination under the Rehabilitation Act, the employee bears the burden of demonstrating: "(1) that he or she has a disability; (2) that he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) that he or she was nonetheless terminated or otherwise prevented from performing the job."  Id. at 831.  In this case, Allegheny does not dispute that Kurek has a disability, nor does it dispute that Kurek was prevented from returning to her position as a teacher.  Thus, the only dispute between the parties is whether Kurek was "otherwise qualified to perform the essential functions of the job."

EEOC regulations divide this qualification inquiry into two parts: (i) whether the individual has the requisite skill, experience, education and other job-related requirements of the position sought; and (ii) whether the individual, with or without reasonable

---

[1]It is undisputed that Allegheny is subject to the Rehabilitation Act by virtue of the fact it receives federal funding.

accommodation, can perform the essential functions of that position. 29 C.F.R. § 1630.2(m).[2] It is undisputed that Kurek possessed the requisite skill, experience, and education to perform the duties as a teacher. Nonetheless, Allegheny maintains that summary judgment was appropriate, because it is undisputed that Kurek could not work a 7-3/4 hour day. Kurek, for her part, argues that this is immaterial, and disputes Allegheny's assertion that working a 7-3/4 hour day is an "essential function" of being a teacher at Allegheny. Accordingly, the dispositive issue is whether Kurek has offered sufficient evidence from which a jury could conclude that a 7-3/4 hour workday is not an essential function of teaching at Allegheny.

Whether a particular duty is an "essential function" of a given job turns on whether that duty is "fundamental" to the job. 29 C.F.R. § 1630.2(n)(1). To make this determination, courts should look to numerous factors, including, but not limited to:

> (i) The employer's judgment as to which functions are essential;
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job; and/or
> (vii) The current work experience of incumbents in similar jobs.

Id.

---

[2]While these regulations construe the Americans with Disabilities Act, "[t]he Rehabilitation Act provides that the standards of the ADA are to be used in determining whether the Rehabilitation Act has been violated in the employment context." Branham v. Snow, 392 F.3d 896, 902 (7th Cir. 2004).

Allegheny offers considerable evidence to show that completion of a 7-3/4 hour workday is an essential function of a teacher's job. To begin with, the pertinent Collective Bargaining Agreement (CBA) makes clear that teachers "shall work where assigned a schedule of 7-3/4 consecutive hours on site . . . ." 66A.[3] Moreover, the CBA goes on to state that the 7-3/4 hour day is only the *minimum*, and that from time to time, employees "shall be required to participate in activities which extend beyond the scheduled 7-3/4 hour day." Id. The Teachers' Handbook confirms this workday hourly minimum, and states in pertinent part that "[t]he professional employee teaching day shall consist of the duly contracted hours (currently 7-3/4 hours)." 13A. The Teachers' Handbook also specifies that teachers who are tardy or who take unauthorized early departure will be subject to discipline, up to and including dismissal.

Allegheny has also offered evidence to show that there are consequences of not having a teacher available to work a 7-3/4 hour day on a regular basis. More specifically, Allegheny offered evidence that the unavailability of a teacher at the end of the day on a regular basis would effectively increase other teachers' workloads, who would have to cover for an absent teacher in terms of supervising study halls and performing other non-

---

[3]See also id. ("It is recognized that each employee is responsible for a 7-3/4 hour day."). Kurek argued below and again on appeal that the CBA does not mandate a 7-3/4 hour day. See Reply Br. at 5 ("Again, Appellee simply refers back to the faulty premise that the CBA mandates a 7 3/4 hour day, which it does not."). As the District Court properly determined, this argument is flatly precluded by the terms of the CBA cited above. See 14A, n.5.

instructional duties.  Finally, teacher presence on-site is essential to ensure that sufficient staff is available should an emergency occur.

For her part, Kurek offered no evidence to dispute that a 7-3/4 hour workday is necessary to ensure adequate staffing and efficient operations.  Rather, Kurek offered only evidence that, from time to time, seven teachers were allowed to take early departure, which, Kurek argues, permits the inference that a 7-3/4 workday is not an essential function of being a teacher at Allegheny.  We disagree.

To begin with, there is no dispute that four of the teachers Kurek identified as taking early departure are athletic coaches.  It is undisputed that Allegheny policy permits athletic coaches to leave the building early in order to attend practices and games of school teams.  Second, these early departures were not the norm; rather, they were only occasional.  Given that Kurek has offered no evidence to suggest (i) that these coaches took early departure on anything approaching a regular basis; or (ii) that these coaches ever took early departure for any reason other than to attend a school-sanctioned athletic event with which they were involved, we do not find that this evidence creates a genuine dispute of material fact about the necessity of the 7-3/4 hour workday.

The evidence pertaining to the remaining three teachers is equally unpersuasive. The record evidence shows that the remaining three teachers Kurek identified were permitted to take early departure as a reward for their participation in a now-defunct cafeteria duty program.  However, the undisputed evidence also shows that Allegheny discontinued this program in 2001 -- some two years before Kurek requested to take early

8

departure -- precisely because these early departures were creating a burden for the teachers and administrators who remained at school through the end of the day. Kurek has offered no evidence to show (i) that any teacher has been permitted to take early departure with regularity at any point in time since 2001; or (ii) that Allegheny's stated reasons for its 2001 policy change were pretextual in whole or in part. Accordingly, we hold that Kurek's evidence is insufficient to create a genuine dispute of material fact regarding whether working a 7-3/4 hour workday is an "essential function" of a teacher's duties at Allegheny.[4]

## IV.

For the foregoing reasons, we will affirm the decision of the District Court in all respects.

---

[4]Given our holding, we need not (and therefore do not) consider whether Allegheny would have been entitled to summary judgment on the ground that the alternative accommodation it proposed to Kurek was reasonable.